UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA DOWELL, a single man,

    Plaintiff,

  v.

CITY OF LYNNWOOD, a municipal corporation; OFFICER JASON VALENTINE, individually and the marital property composed of OFFICER JASON VALENTINE and "JANE DOE" VALENTINE and OFFICER T.J. BROOKS, individually and the marital property composed of OFFICER T.J. BROOKS and "JANE DOE" BROOKS,

    Defendants.

CASE NO. C06-1240-JCC

ORDER

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (Dkt. No. 37), Plaintiff's Response and Motion for Rule 56(f) Continuance (Dkt. No. 44), and Defendants' Reply (Dkt. No. 48). Having considered the parties' briefing and supporting documentation, and finding oral argument unnecessary, the Court hereby finds and rules as follows.

## I. BACKGROUND

Plaintiff was a patron at a Lynnwood bar in the early morning hours of August 30, 2003 when a fight broke out among several individuals inside the establishment. (Pl.'s Resp. 2 (Dkt. No. 44).) Lynnwood police were dispatched to the scene, where they found that the altercation had moved outside,

ORDER – 1

followed by a gathering crowd. (Valentine Decl. ¶ 3 (Dkt. No. 39).) Defendants Valentine and Brooks were among the officers who responded to the call, and it is undisputed that they were not in uniform. What happened next is subject to dispute. Essentially, Defendants claim that Officer Valentine was approached by one of the men involved in the fight, and told that Plaintiff was one of the people who assaulted him. (Valentine Report (Dkt. No. 39 at 4).) Officer Valentine, followed by Officer Brooks, then approached Plaintiff and first identified himself as a Lynnwood Police officer before demanding to see identification. (*Id*.) According to Defendants, Plaintiff would not comply with instructions, leading to an altercation and eventually to Plaintiff's arrest. (*Id*.) Plaintiff claims that he was not involved in the original fight and was looking to leave when Officer Valentine, without first identifying himself as a police officer, "lunged" at him from out of the crowd and punched him in the forehead. (Pl.'s Resp. 2–3 (Dkt. No. 44).) According to Plaintiff, it was only after this point that Officer Valentine identified himself and placed him under arrest. (*Id*. at 3.)

As a result of the altercation with Officer Valentine, Plaintiff (who was then the defendant) was charged with obstruction of a law enforcement officer. WASH. REV. CODE 9A.76.020. Prior to trial, several hearings were held, including a preliminary evidentiary hearing at which Plaintiff's attorney argued motions to suppress and dismiss based on the conduct of Officers Valentine and Brooks. (Pl.'s Resp. 4–5 (Dkt. No. 44); Defs.' Mot. 3 (Dkt. No. 37).) The motions were denied and the matter proceeded to a trial by jury, where Plaintiff was acquitted of obstruction. (Defs.' Mot. 3 (Dkt. No. 37).)

On August 29, 2006, Plaintiff filed this civil action against the City of Lynnwood, Officer Valentine and Officer Brooks. (Compl. (Dkt. No. 1).) As currently constituted, Plaintiff has three sets of claims: (1) violation of his constitutional rights by the individual Defendants, compensable under 42 U.S.C. § 1983, (2) malicious prosecution by all Defendants, and (3) negligence by Defendant City of Lynnwood, for failure to use reasonable care in the hiring, training, supervision, and retention of Officers Valentine and Brooks. (First Am. Compl. ¶¶ 5.1, 6.1, 7.1 (Dkt. No. 17).)

ORDER – 2

Defendants now move for summary judgment on all claims except Plaintiff's § 1983-based excessive force claim against the individual officers. (Defs. Mot. 2 (Dkt. No. 37).) Defendants argue that the remaining § 1983 claims, as well as Plaintiff's malicious prosecution claim, are barred by the doctrine of collateral estoppel, having been raised in the state court proceedings during the preliminary evidentiary hearing. (*Id*. at 4–8.) Defendants further contend that Plaintiff's negligence claim against the city must fail for lack of a duty owed to him as an individual, under the public duty doctrine. (*Id*. at 9–12.) Plaintiff responds by arguing that the doctrine of collateral estoppel does not apply under these circumstances, and that he has set forth all requisite elements to support his negligence claim. (Pl.'s Resp. 15–22 (Dkt. No. 44).) Moreover, Plaintiff requests the opportunity to conduct further discovery under Rule 56(f) of the Federal Rules of Civil Procedure. (*Id*. at 22–24.)

**II.   DISCUSSION**

    **A.   Standard of Review**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). There is no genuine issue for trial unless there is sufficient evidence to support a jury verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 250. The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Id*. at 257. Furthermore, the Court must draw all reasonable inferences in favor of the nonmoving party. *See F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994).

In addition to demonstrating that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when

ORDER – 3

the nonmoving party fails to make a sufficient showing on an essential element of a claim for which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.     Section 1983 Claims Against Officers Valentine and Brooks

Defendants argue that the doctrine of collateral estoppel bars most of Plaintiff's § 1983 claims. (Defs.' Mot. 4–8 (Dkt. No. 37).) The federal basis for this assertion is Title 28 U.S.C. § 1738, which "generally requires 'federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Haring v. Prosise*, 462 U.S. 306, 313 (1983) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). In order to decide whether such preclusive effect is warranted, federal courts apply the doctrine of collateral estoppel under the law of the state in which the action originated. *See*, *e.g.*, *Haring*, 462 U.S. at 314–315 (applying Virginia law). This approach applies to federal claims under 42 U.S.C. § 1983, among others. (*Id.*)

In Washinton, "[t]he doctrine of collateral estoppel prevents a party from relitigating issues that have been raised and litigated by the party in a prior proceeding." *Clark v. Baines*, 84 P.3d 245, 249 (Wash. 2004). Washington courts have fashioned a four-part test to decide whether collateral estoppel should apply in a given case. Under this analysis:

> The party asserting collateral estoppel must prove: (1) the issue decided in the prior adjudication is identical to the one presented in the current action, (2) the prior adjudication must have resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied.

(*Id.*) Failure to satisfy any one of these criterion renders the doctrine inapplicable. (*Id.*)

Defendants' theory is that the preliminary evidentiary hearing in Plaintiff's criminal case, at which he moved to suppress evidence and dismiss the obstruction charge, gave him his opportunity to argue that Officers Valentine and Brooks violated his constitutional rights. Defendants assert that since those motions were denied, Plaintiff is collaterally estopped from pursuing all but one of his § 1983 claims in

ORDER – 4

this forum. (Defs.' Mot. 7–8 (Dkt. No. 37).)

This presents a highly contextual inquiry for the Court, but not because the facts of the altercation itself must be parsed and determined. Rather, the legal question of whether collateral estoppel bars this claim depends on how this Court construes the criminal proceedings in Lynnwood municipal court that are thought to have preclusive effect. For this reason, it is unclear why Defendants, as the moving party seeking to apply collateral estoppel, would have neglected to provide the Court with a transcript of the criminal proceedings, offering instead a copy of Plaintiff's briefing. (*See* Dkt. No. 40 at 7–25.) The best that can be said for this strategy is that Defendants believed they only had to demonstrate what Plaintiff *argued* at that time, as opposed to what was actually *decided*. This plainly misconstrues the first factor of the preclusion analysis, which requires that "the issue **decided** in the prior adjudication is identical to the one presented in the current action." *Clark*, 84 P.3d at 249 (emphasis added). What the Court is left with then, are excerpts of the preliminary hearing provided by Plaintiff. (Ex. F (Dkt. No. 45).) That transcript, along with inferences that naturally flow from the posture of that proceeding, clearly indicate that much of what was decided is not identical to the claims set forth in this action under § 1983.

In order to determine the scope of the decision rendered at the preliminary hearing, it will be helpful to first set forth the basic contours of the governing law. Under the Fourth Amendment of the Federal Constitution, the police have the right to conduct an investigative detention within the parameters first set forth in *Terry v. Ohio*:

> where a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. 1, 30 (1968). As this language makes clear, the constitutionality of a *Terry*-stop encompasses

ORDER – 5

both the initial decision by the police to make the stop, as well as the manner in which they carry it out. The legal regime governing arrest is a separate matter, and requires a finding of probable cause, roughly defined as "'reasonable grounds to believe' that a felony had been committed and that the person to be arrested committed it." 2 LAFAVE, ISRAEL & KING, CRIMINAL PROCEDURE, § 3.5(a) (2d ed. 1999).

Plaintiff's brief in support of his motions to suppress and dismiss argued that the decision to single him out for an investigative detention and pat-down was constitutionally infirm. (Dkt. No. 40 at 7–25.) The Judge appears to have found it permissible for Defendants to conduct a *Terry*-stop on Plaintiff: "Here there was enough reason for the police to believe that Dowell was a person that whom [*sic*] they ought to be interested and therefore they could seize his person on less than probable cause to believe that he had committed a crime and contain him long enough to sort him out." (Ex. F (Dkt. No. 45 at 7).) Consistent with the rationale of *Terry*, the Judge also found that the circumstances permitted a pat-down: "I think Officer Valentine would have been nuts not to pat the Defendant [here the Plaintiff] down." (*Id*. at 9.) However, when it came to characterizing the manner in which the stop was conducted, and the circumstances leading to Plaintiff's arrest, the Judge appears to have found such questions unnecessary to resolve: "Mr. Dowell, in my opinion, had a duty to submit to [the *Terry*-stop], and instead got into this frickas [*sic*] more about which I do not need to enter findings because they're not necessary to deciding the motion." (*Id*. at 9.)

From these excerpts, it is apparent that the preliminary hearing did not resolve the question of whether Officers Valentine and Brooks actually conducted a permissible *Terry*-stop, or the question of whether they had probable cause for arrest. The Judge simply found it unnecessary to resolve the conflicting versions of the altercation between Plaintiff and Defendants, once it materialized. As cited above, the Judge even stated explicitly that the stop was permissible "on less than probable cause." (Ex. F (Dkt. No. 45 at 7).) Defendants' argue that even if "the criminal judge did not explicitly find that Officer Valentine had probable cause to arrest plaintiff, such a finding is implied in the fact that the case

ORDER – 6

proceeded to trial." (Defs.' Reply 4 (Dkt. No. 48).) This argument confuses the two altercations at issue. The Judge's findings of fact concerning the bar fight go to his assessment of whether a *Terry*-stop was permissible; the facts surrounding the altercation between Plaintiff and Officer Valentine go to the execution of the investigative detention itself, and serve as the basis for Plaintiff's arrest and prosecution. This latter question is what the criminal trial was to resolve, and therefore was not implicitly answered by the Judge's decision to deny Plaintiff's motions. For these reasons, the Court finds that Plaintiff is not collaterally estopped from pursuing his claims that Officers Valentine and Brooks conducted a constitutionally impermissible *Terry*-stop and arrest.

Plaintiff did argue at the preliminary hearing that the officers' decision to single him out in the first place was unconstitutional, and the Lynnwood judge issued an adverse ruling. Therefore, a question remains as to whether Plaintiff can raise the point again in his § 1983 claim. Even assuming all other elements of the analysis are satisfied, the Court has serious concerns about whether an "injustice" would result from adopting Defendants' position. "The determination of whether application of collateral estoppel will work an injustice on the party against whom the doctrine is asserted-the fourth element-depends primarily on 'whether the parties to the earlier proceeding received a full and fair hearing on the issue in question.'" *Clark*, 84 P.3d at 249 (citing *Thompson v. Dep't of Licensing*, 982 P.2d 601, 608 (Wash. 1999)). Thus, whereas a criminal conviction at trial can, under some circumstances, constitute a "full and fair" hearing, *Kyreacos v. Smith*, 572 P.2d 723, 724–25 (Wash. 1977), Washington courts have not extended this approach to other cases, such as "where a criminal conviction results from an *Alford* plea." *Falkner v. Foshaug*, 29 P.3d 771, 775 (Wash. App. 2001).

Here, Plaintiff was acquitted of the criminal charge at trial, and yet Defendants argue that since "[b]oth officers testified at [the preliminary] hearing and plaintiff had the opportunity to cross-examine them," there was a "full and fair hearing" on the question. (Defs. Reply. 5 (Dkt. No. 48).) However, at trial there were two eyewitnesses, Kimberly Coombe and Karen Williams, who directly contradicted the

ORDER – 7

officers' account. (Pl.'s Resp. 10 (Dkt. No. 44); Exhs. C, G, & H (Dkt. No. 45).) Both witnesses indicated that Officer Valentine assaulted Plaintiff before identifying himself, and did so without provocation or threat, necessarily calling into question whether Defendants reasonably thought "criminal activity may be afoot." *Terry*, 392 U.S. at 30. Neither party has explained to the Court why this evidence was not considered at the preliminary hearing, an omission whose consequences must fall upon the moving party. Recognizing the considerations that often weigh in favor of estoppel, the Court is not convinced that the preliminary hearing offered a "full and fair" opportunity to resolve the constitutionality of the decision to make a *Terry*-stop. In light of the significant constitutional rights at issue, the Court will not tell Plaintiff that his ship has already sailed without more than has been shown here.

### C.  Malicious Prosecution Claim

Defendants also maintain that Plaintiff's state law claim for malicious prosecution is collaterally estopped for the same reasons set forth above. In Washington, an action for malicious prosecution requires that the plaintiff allege and prove: (1) that the prosecution was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damages as a result of the prosecution. *Loeffelholz v. Citizens for Leaders With Ethics and Accountability Now*, 82 P.3d 1199, 1215 (Wash. App. 2004). In civil suits, a plaintiff must also allege and prove two additional elements: (6) arrest or seizure of property, and (7) special injury. (*Id*.; *Clark v. Baines*, 84 P.3d 245, 248–49 (Wash. 2004)).

Defendants base their collateral estoppel argument on the second element listed above, arguing that the state criminal proceedings made a probable cause determination and therefore the matter cannot be re-litigated. (Defs.' Mot. 8–9 (Dkt. No. 37); Defs.' Reply 7–8 (Dkt. No. 48).) This argument fares no better than it did with respect to Plaintiff's § 1983 claims. Once again, Defendants make assertions about

ORDER – 8

the Lynnwood municipal court ruling that this Court has no means of verifying in the absence of a transcript. More importantly, they confuse the relevant pairing of fact and law. Plaintiff's theory in his civil suit is that he suffered malicious prosecution for obstruction, a charge that arose from his altercation with Officers Valentine and Brooks. The question that was decided in the state court proceeding was whether the officers had cause to detain and question Plaintiff for any role he might have played in the bar fight. That Judge explicitly declined to decide the facts surrounding the altercation with the officers, facts which determine whether there was probable cause for arrest and therefore whether the subsequent prosecution was "malicious." Absent such a determination, the relevant issue is not "identical" and Defendants' collateral estoppel argument fails.

**D.      Negligence Claim**

Defendants further move for summary judgment on Plaintiff's claim against the City for negligent hiring, training, supervision and retention of Defendants Valentine and Brooks, arguing that the City of Lynnwood did not owe Plaintiff a duty. (Defs.' Mot. 10 (Dkt. No. 37).) Plaintiff disputes this claim as a matter of law, and requests the opportunity to conduct further discovery under Rule 56(f) of the Federal Rules of Civil Procedure. (Pl.'s Resp. 17–24 (Dkt. No. 44).) Defendants base their argument upon what is known as the public duty doctrine, which states that no cause action against a governmental entity will lie for individuals who are injured by the breach of a governmental obligation owed to the public in general, or more succinctly, "a duty to all is a duty to no one." 16 DEWOLF & ALLEN, WASHINGTON PRACTICE ("WASH. PRACTICE") § 14.7 (3d ed. 2006). There are four exceptions to the public duty doctrine: (1) legislative intent; (2) special relationship; (3) volunteer rescue; and (4) failure to enforce. *Babcock v. Mason County Fire Dist. No. 6*, 30 P.3d 1261, 1268 (Wash. 2001). Plaintiff asserts that both the special relationship and the legislative intent exceptions apply to this case.

The special relationship exception applies when the interactions of the plaintiff and a public official are such that the official assumes a duty to use due care for that plaintiff's benefit in particular.

ORDER – 9

Generally, to invoke this exception: "(1) there must be privity or direct contact between the public official and the injured plaintiff; (2) the public official must give express assurances; and (3) the plaintiff must justifiably rely on those assurances." WASH. PRACTICE § 14.9; *see also Harvey v. County of Snohomish*, 134 P.3d 216, 218–219 (Wash. 2006). This exception frequently arises in the context of 911 calls, *see, e.g., Harvey*, 134 P.3d 216 (no evidence that the plaintiff relied to his detriment on statements by 911 operator), as well from administrative actions where representations by a public official may occasionally induce reliance. *See, e.g., Sundberg v. Evans*, 897 P.2d 1285 (Wash. App. 1995) (assurances about a favorable zoning decision sufficient to invoke a duty of care).

  Despite Plaintiff's argument to the contrary, there is no basis for finding a special relationship in this case that is sufficient to invoke a duty to Plaintiff individually. Plaintiff was given no assurances by Defendants and therefore did not rely on anything to his detriment. This distinguishes this case from the line of 911 caller cases that Plaintiff tries to invoke. *See Chambers-Castanes v. King County,* 669 P.2d 451 (1983); *Beal v. City of Seattle*, 954 P.2d 237 (Wash. 1998); *Bratton v. Welp,* 39 P.3d 959 (Wash. 2002). Plaintiff argues that there is an implied assurance that the police will act within legal bounds, (Pl's Resp. 19–20 (Dkt. No. 44)), however this is but a general duty to the public at-large. If it were otherwise, one might ask who does *not* enjoy this "special relationship" with the police? Plaintiff's claims undoubtedly arise from "direct contact" with the individual Defendants; indeed, the very nature of law enforcement requires that police officers interact directly with members of the community. But to assert that such interaction alone creates a "special relationship," is to collapse the distinction into the rule. That is, there would be no injury suffered by an individual at the hands of the police that would *not* be the product of a "special relationship" simply by virtue of the fact that it *happened*. If the public duty doctrine means anything, it cannot be this.

  Plaintiff's attempt to invoke the "legislative intent" exception is also to no avail. This exception applies when a regulatory statute evinces a clear legislative intent to identify and protect a circumscribed

ORDER – 10

class of people. *Burnett v. Tacoma City Light*, 104 P.3d 677, 684 (Wash. App. 2004) (Washington Emergency Management Act enacted to protect the public generally, not a specific class of citizens); *see also*, *Dorsch v. City of Tacoma*, 960 P.2d 489, 491 (Wash. App. 1998) (electrical safety code did not evidence an intent to create an individualized duty); *Halvorson v. Dahl*, 574 P.2d 1190, 1192–93 (Wash. 1978) (building code evinced a legislative intent to protect a circumscribed class of building dwellers). The legislative acts on which Plaintiff relies are the Washington Constitution and several provisions of the Revised Code of Washington. (Pl.'s Resp. 21 (Dkt. No. 44).) None of these sources circumscribe a particular class of people for protection. In providing certain civil rights or setting forth acceptable bounds for police conduct, the legislature undoubtedly envisaged such protections being enjoyed by anyone who comes in contact with law enforcement, just like the legislation in *Burnett* was for the benefit of emergency victims. But as in *Burnett*, this alone is not the delineation of a special class, any more than water purity standards protect the class of water-drinking citizens of Washington. Any legislative act will have consequences for the citizens of a jurisdiction, and depending on the whims of fate, it may affect some more than others. However, for the legislative exception to inhere, the class must be a creature of the legislature rather than mere circumstance.

Plaintiff chastises Defendants for failing to cite "a single case holding that the police are immune from suit for unreasonable use of force and/or lack of probably cause to arrest . . ." (Pl.'s Resp. 22 (Dkt. No. 44).) Yet, no such theory is presented here, and Plaintiff is already suing the police under § 1983. Plaintiff's negligence claim raises a different question of whether a City can be liable under common law negligence principles for the spur of the moment acts of its police officers. For this proposition, it is Plaintiff who has failed to cite a single authority directly on point.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (Dkt. No. 37) is DENIED in part and GRANTED in part. Plaintiff's § 1983 claims and his claim for malicious prosecution

ORDER – 11

1

2  are allowed to proceed, while his negligence claim against Defendant City of Lynnwood is dismissed.

3  Without a viable negligence claim, Plaintiff's Rule 56(f) motion (Dkt. No. 44) is moot and therefore

4  DENIED.

5      SO ORDERED this 11th day of December, 2007.

6

7

8  _____

9  John C. Coughenour
   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  ORDER – 12